IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED
04 MAY 13 PM 3:43

| | |
|---|---|
| NITIKA MEHTA, AS TRUSTEE OF THE N.D. MEHTA LIVING TRUST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AIG SUNAMERICA LIFE ASSURANCE CO. f/k/a Anchor National Life Insurance Company,<br><br>Defendant. | CIVIL ACTION NO. 04-328 MJR |

## DEFENDANT'S NOTICE OF REMOVAL

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendant AIG SunAmerica Life Assurance Company f/k/a Anchor National Life Insurance Company ("AIG SunAmerica Life") files this Notice of Removal pursuant to 28 U.S.C. § 1441.

### INTRODUCTION

1. Plaintiff filed a prior action based on the same facts underlying this lawsuit, but asserting different theories of liability, in December 2003. After AIG SunAmerica Life removed the prior action, Plaintiff voluntarily dismissed it and retooled her complaint, attempting unsuccessfully to deprive this court of subject matter jurisdiction. This lawsuit differs significantly from other "market timing" class actions previously filed in Illinois Circuit Court, removed to this Court, and remanded. By basing her claims on AIG SunAmerica Life's duties under federal securities law, Plaintiff thrusts this suit squarely within the jurisdiction of this federal court. Also, because Plaintiff broadens her class definition to include not just holders, but

*all* owners, including purchasers and sellers, other than so-called market timers, her case is removable under SLUSA.

## PROCEDURAL BACKGROUND

2. Plaintiff Nitika Mehta, as Trustee of the N.D. Mehta Living Trust, individually and on behalf of all others similarly situated ("Mehta"), filed suit on April 5, 2004, in the Twentieth Judicial Circuit Court of St. Clair County, in the State of Illinois. AIG SunAmerica Life was served with the suit, through the Illinois Department of Insurance, on April 13, 2004. AIG SunAmerica Life timely filed this notice of removal within the 30-day time period required by 28 U.S.C. § 1446(b).

## NATURE OF THE SUIT

3. Mehta alleges in her Complaint that AIG SunAmerica Life: (a) failed to implement valuation and pricing policies and procedures that account for "price relevant events" that occur before the AUV is set and are likely to cause the AUV to not reflect true market values and (b) failed to implement and enforce policies to restrict market timing practices, instead permitting market timing traders to earn profits at the expense of non-market timing investors. (Complaint at ¶¶ 30, 43, 51, 55, 58 and 60.) The Complaint asserts the following claims: Count I, Negligence; Count II, Gross Negligence; Count III, Breach of Fiduciary Duty; and Count IV, Violation of California Business and Professional Code § 17200 *et seq.* The Complaint seeks restitution of all monies acquired by means of any "unfair and unlawful" practices, costs of suit, attorneys' fees, and interest. (*Id.* at p. 16.)

## BASIS FOR REMOVAL

4. This is a civil action in which the court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1367 and 1441(b).

I. **FEDERAL QUESTION**

    A. **Removal is proper under the Investment Company Act of 1940**

        *1. Mehta's state law claims are completely preempted.*

5. This suit is removable on federal question grounds because Mehta's state law claims regarding the valuation of the securities at issue intrude into an area that Congress has reserved exclusively for federal jurisdiction. The Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.* ("the 1940 Act"), and rules promulgated thereunder, comprehensively govern when and how registered investment companies (including the Separate Account Variable Annuity Account Seven (hereafter "Separate Account"), in which Mehta's assets were invested) value interests in securities held within subaccount funds. 15 U.S.C. §§ 80a-2(a)(41), 80a-22(c); 17 C.F.R. § 270.22c-1.

6. The distinction between the pricing of shares of individual securities traded on the market and the pricing of mutual fund shares (and in the variable annuity context, accumulation units) is central to Congress's intent and purpose in providing this comprehensive, and preemptive, federal statutory and regulatory scheme. Investors do not buy and sell accumulation units in the secondary markets. They buy them directly from the annuity issuer. Investors redeem their units by tendering them back to the annuity issuer, which in turn pays out the total unit value. Therefore, unlike shares of securities issued by other entities, variable annuity accumulation units do not have a market price. Their price is determined by the value of the assets that are in the variable annuity subaccount portfolio.

7. Before the passage of the 1940 Act, investors capitalized on arbitrage opportunities available due to this distinction and investment companies' failure to follow uniform rules in valuing the mutual fund shares. As a result, insiders bought mutual fund shares

at less than the aggregate value of the portfolio and redeemed the shares at more than the aggregate portfolio value.

8.     To address these discriminatory valuation practices, Congress established a comprehensive valuation structure that also applies to variable annuity investments. This structure centers around two strict directives, with which all companies governed by the 1940 Act—including companies that value securities invested in variable annuity subaccounts—must comply. Section 2(a)(41), and the rules thereunder, mandate the uniform way in which all funds must value the securities they hold in their portfolios. 15 U.S.C. § 80a-(2)(a)(41)(B); 17 C.F.R. § 270.2a-4. Section 22(c) and Rule 22c-1 require that individuals who place orders to purchase or redeem receive the price which is determined *after* the order is placed. 15 U.S.C. § 80a-22; 17 C.F.R. § 270.22c-1. This statutory framework is so comprehensive in scope and so detailed as to indicate Congress wished fully to occupy the field of the subject matter at issue here—specifically, the method of valuing and timing of the valuation of mutual fund shares and, in the variable annuity context, accumulation units. In fact, the area is so pervasively regulated by federal law that a quick search reveals 563 Securities and Exchange Commission ("SEC") no action letters or exemptions with respect to Rule 2a-41, 88 SEC no action letters or exemptions with respect to Section 22 and Rule 22c-1, and an additional 4 no action letters or exemptions dealing with both categories. This is an exclusively federal issue, pure and simple.

9.     Congress created this standard to ensure both transparency and uniform treatment of all investors, and this federal duty—to price one way, in accordance with federally established rules and regulations—is how Congress decreed that this uniformity would occur. Through this lawsuit, Mehta seeks to impose on this otherwise uniform system (a) potentially varying state law standards for the valuation of 1940 Act securities and (b) higher state law duties towards

some investors (the putative class) than are owed to other investors (co-called market timers). Both would interfere with the accomplishment and execution of the full purposes and objectives of Congress. This suit is thus a direct attack on the regulatory structure enacted by Congress and enforced by the SEC and other regulatory bodies.

10. Applying separate state law standards would interfere with the SEC's ability to regulate the fund industry comprehensively and uniformly in accordance with the objectives of Congress, and would allow a state court jury to overrule the judgment of Congress and the SEC on how companies should price fund shares. This suit, if successful, would gut this federal mandate by imposing a judicially created set of pricing requirements different than those contained in federal law.

11. The 1940 Act provides that state courts may exercise jurisdiction over disputes relating to the 1940 Act only "insofar as such jurisdiction does not conflict with any provision of this subchapter [the 1940 Act] or of any rule, regulation, or order hereunder." 15 U.S.C. § 80a-49. State courts cannot address issues that will result in a state court jury creating different valuation rules than those that Congress clearly intended to be the sole province of securities associations or the SEC. Nor can a state court jury be permitted to create state court duties to some investor groups that conflict with the federal duty to treat all investors the same by following the same pricing methods. Because that is exactly what this case seeks to do, the state court may not resolve the case.

### 2. *Mehta's claims are, in substance, 1940 Act Claims.*

12. Removal is also proper because Mehta's claims, in substance, arise under the 1940 Act and the rules and regulations promulgated thereunder. 28 U.S.C. § 1331. Mehta's claims are based upon the alleged improper calculation of the AUV for subaccounts offered within a Separate Account that is registered with the SEC under the 1940 Act. The requirement

of "forward-pricing," that all purchases and redemptions of fund shares occur at a price based on the next computed net asset value after tender of the share for redemption or the order to purchase, is a mandatory requirement of Rule 22c-1 of the General Rules and Regulations under the 1940 Act (the "1940 Act Regulations"). The 1940 Act Regulations also specify the method that is required to be used in calculating values for purposes of such sales and purchases, and is specifically set forth and governed by the 1940 Act and the 1940 Act Regulations. *See, e.g.*, 15 U.S.C. § 80a-22(c); 17 C.F.R. §§ 270.2a-4, 270.22c-1, and 270.22e-2.

13. The 1940 Act defines value as:

> (i) With respect to securities for which market quotations are readily available, the market value of such securities; and (ii) with respect to other securities and assets, fair value as determined in good faith by the board of directors.

15 U.S.C. § 80a-2(41)(B). Rule 2a-4, enacted pursuant to the 1940 Act, requires that valuation be determined as follows:

> Portfolio securities with respect to which market quotations are readily available shall be valued at current market value, and other securities and assets shall be valued at fair value as determined in good faith by the board of directors of the registered company.

17 C.F.R. § 270.2a-4(a)(1). The regulations further require companies to compute current net asset value "no less frequently than once daily, Monday through Friday, at the specific time or times during the day that the board of directors of the investment company sets," subject to certain exceptions. 17 C.F.R. § 270.22c-1(b)(1).

14. Mehta alleges in connection with all counts of the Complaint that AIG SunAmerica Life had a duty "to use mutual fund share values predicated upon accurate market value when valuing Variable Portfolios and setting their daily AUVs." (Complaint at ¶ 49.) Although the Complaint itself does not specifically identify Rule 2a-4, that Rule is the exclusive source of the duty that exists regarding valuation of such securities, and any claims regarding

breaches of Rule 2a-4 necessarily are federal questions that must be brought in federal court. There can be no state court duties to do something more or different than Rule 2a-4 requires, because any such duties would conflict with the 1940 Act requirements of exclusive SEC control over valuation methods, to ensure a uniform national set of standards in this regard.

15.     Mehta's desire to have a state court jury trump Congress and the SEC is clear from her pleading. She seeks damages because AIG SunAmerica Life should, but allegedly did not, account for what she calls "price relevant information" in performing Rule 2a-4 valuations. (Complaint at ¶ 43.) This is a term found nowhere in the 1940 Act or its regulations, or anywhere else in the federal law for that matter. It represents a new and different valuation requirement than those mandated by federal law, which requires that valuation occur with reference to a market quotation, if one is readily available, and with reference to other factors only when one is not. Under Mehta's claims, a state court jury will determine what is a "price relevant event" and how AUVs should be priced in consideration of such event. Mehta's claims conflict with Rule 2a-4, raise a question that is necessarily federal in nature, and removal is appropriate.

**B.    Removal is mandated under the Securities Litigation Uniform Standards Act of 1998**

16.     Removal is proper because Mehta's claims are asserted as a class action involving covered securities that are governed by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77 *et seq.* ("SLUSA"). Under SLUSA, federal courts have jurisdiction over certain "covered class actions," like this one, alleging fraud in connection with the sale or purchase of "covered securities." *See* 15 U.S.C. §§ 77p(f)(2)(A), (p)(f)(3), 77r(b) and 15 U.S.C. §§ 78bb(f)(5)(B), (f)(5)(E); 15 U.S.C. §§ 77p, 78bb(f); *Gavin v. AT & T Corp.*, 2003 WL 22849128 (N.D. Ill. Dec. 1, 2003).

### *1.  This is a "covered class action" under SLUSA.*

17.  SLUSA applies to all "covered class actions" based on state law claims that allege (1) a misrepresentation or omission of a material fact in connection with the purchase or sale of a "covered security" or (2) that the defendant used or employed any manipulative or deceptive device or other contrivance in connection with the purchase or sale of a "covered security." 15 U.S.C. § 78bb(f)(1). "Covered class actions" are defined to include:

> any single lawsuit in which—...
>
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the protective class predominate over any questions affecting only individual persons or members...

15 U.S.C. §§ 77p(f)(2)(A); 15 U.S.C. §§ 78bb(f)(5)(B).

18.  Mehta brought this action to recover damages on a representative basis and alleges that common questions of law or fact predominate over any questions affecting individual persons. (Complaint ¶ 43.) While the Complaint intentionally omits all reference to the purchase and sale of AIG Sun America Life's variable annuity, Mehta cannot avoid the reality that—no matter how craftily drafted—the purchase and sale of covered securities is the substance of her claims. Mehta has no claim absent the purchase and sale of variable annuities, whether by her, by other class members, or by the so-called market timers whose purchases and sales she claims to be the source of her alleged damages. Notably, the class definition here—unlike the one in the previously remanded mutual fund market timing cases—is not limited to so-called "holders." The class definition in this case includes all purchasers, sellers, and "holders," except those who purchase and sell as "market timers." (Complaint at ¶ 37.)

19.  Ultimately, Mehta confirms that her claims are in connection with the purchase and sale of a covered security by her repeated references to "omissions" in the statement of her

California statutory claim. (Complaint at ¶¶ 70 and 71.) The only conceivable "omission" here could be the failure of AIG SunAmerica Life to disclose in the prospectus Mehta received before making her purchase the fact that "market timing" may occur in the offered subaccounts. Therefore, this is a SLUSA case no matter how Mehta choose to plead it. Put another way, Mehta's complaint does not allege that AIG SunAmerica Life breached the contract or prospectus provisions that detail how valuation occurs; her claim must be that AIG SunAmerica Life did what it contracted with Mehta to do, but failed to disclose that it "expose[d] investors to market timing," that "stale prices" were used and that "price relevant information" was not, and that "market timers" activities would "dilute" the value of her investment. (Complaint ¶¶ 30, 32, 33 and 34.) These are SLUSA claims.

### 2. *The annuities at issue are "covered securities" under SLUSA.*

20. SLUSA defines a "covered security" as "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77(r)(b) of [Title 15] at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C. §§ 77p(f)(3). Paragraph (2) of section 77(r)(b) states:

> A security is a covered security if such security is a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.

21. Mehta invested within a Separate Account that is registered with the SEC under the Investment Company Act of 1940.[1] As such, Mehta's variable annuity policy is a "covered security" under SLUSA. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 109 (2d Cir. 2001).

---

[1] *See* Williams Declaration, attached as Exhibit "A."

## II.  DIVERSITY JURISDICTION

22.  Removal is also proper because this Court has original jurisdiction pursuant to 28 U.S.C. Section 1332 and 28 U.S.C. Section 1367, in that it is a civil action between parties of a diverse citizenship with an amount in controversy of more than $75,000.

23.  Mehta is a citizen of Illinois. (Complaint ¶ 1.)

24.  AIG SunAmerica Life is incorporated in Arizona, with its principal place of business in Los Angeles, California. AIG SunAmerica Life is the only defendant who has been named and served in this action.

25.  If the claims asserted in the Complaint are not considered to be federal claims relating to valuation, misrepresentations, omissions, or manipulative conduct concerning market timing, then they necessarily must be considered as claims that the Separate Account was damaged by mismanagement and the resulting dilution caused by market timers and the conduct alleged in the Complaint, to the detriment of shareholders in the Separate Account.

26.  Allegations that the Separate Account was damaged by the alleged conduct constitute claims belonging to the Separate Account itself, not to individual shareholders, and can thus only be asserted derivatively, rather than in Mehta's individual capacity. *See, e.g., Meyers v. Brinson Advisors, Inc.,* No. 02-CV-0222-DRH, slip op. at 5 (S.D. Ill. July 22, 2002) (denying motion to remand direct action for breach of fiduciary duty brought by mutual fund shareholders against mutual fund where action was properly considered to be derivative action and removal was proper). Any injury suffered by Mehta was "mediated through" the Separate Account, and was not distinct from the injury suffered generally by all shareholders as owners of shares of the Separate Account. *See Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 381 (7th Cir. 1990). The "characterization of []claims as individual, rather than derivative, does not make them so," and the Court must consider "the nature of the wrong plaintiff alleges in the

body of the complaint." *Cottle v. Standard Brands Paint Co.*, CIV. A. Nos. 9342, CIV. A. 9405, CIV. A. 9151, 1990 WL 34824, at *2 (Del. Ch. March 22, 1990).

27. Because Mehta's claims are, in reality, derivative claims on behalf of the Separate Account, the Separate Account is to be treated as a nominal defendant for purposes of diversity jurisdiction analysis. *See Abrams v. Koether,* Case No. 90 C 3204, 1990 WL 84536, at *1 (N.D. Ill. June 11, 1990). Accordingly, complete diversity exists since Mehta is a citizen and resident of Illinois, while the Separate Account is organized under Arizona law, with its principal place of business in Los Angeles, California.

28. The damages to be considered for purposes of the amount in controversy requirement are the alleged damages suffered by the Separate Account as a whole, not simply the damages of the nominal plaintiffs. Although the putative plaintiff class representatives disclaim damages in excess of $75,000 per individual shareholder, they seek aggregate damages, which may only be sought derivatively on behalf of the Separate Account. The amount in controversy for purposes of a diversity jurisdiction analysis is based not upon the amount sought by a particular plaintiff but "the amount at stake to either party to the suit." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002). The Separate Account has thousands of shareholder accounts and many millions in assets, and the alleged damages far in excess of the $75,000 jurisdictional amount. The amount at stake to the Separate Account exceeds the jurisdictional amount and thus satisfies the requirements of diversity jurisdiction. 28 U.S.C. § 1332(a).

29. There is complete diversity jurisdiction and the amount in controversy exceeds $75,000, thereby granting the Court jurisdiction over the named class representative. 28 U.S.C. § 1332.

## THE NOTICE OF REMOVAL IS PROCEDURALLY CORRECT

30. AIG SunAmerica Life's notice of removal is procedurally correct.

31. AIG SunAmerica Life has attached as Exhibit "B" to this notice all pleadings, process, orders, and all other filing in the state court action as required by 28 U.S.C. § 1446(a).

32. Venue is proper in this district under 28 U.S.C. § 1441(a) because this district and division embrace the place in which the removed action had been pending.

33. In accordance with 28 U.S.C. § 1446(d), AIG SunAmerica Life will promptly file a copy of this Notice of Removal with the clerk of the Twentieth Judicial Circuit of St. Clair County, Illinois, in which the action has been pending.

## JURY DEMAND

34. Mehta demanded a jury in the state court action.

Respectfully Submitted,

*[signature]*

Of Counsel:

| | |
|---|---|
| DAVID A. JONES | HEYL, ROYSTER, VOELKER & ALLEN |
| Attorney-in-Charge | Robert H. Shultz, Jr., #03122739 |
| Texas State Bar No. 00795086 | Richard K. Hunsaker, #06192867 |
| DANIEL McNEEL LANE, JR | Deborah A. Hawkins, #06273931 |
| State Bar No. 00784441 | Mark Twain Plaza II |
| JOSEPH L. SORKIN | 103 West Vandalia Street, Suite 100 |
| State Bar No. 24033215 | P.O. Box 467 |
| AKIN GUMP STRAUSS HAUER & FELD | Edwardsville, IL 62025 |
| 300 Convent, Suite 1500 | Telephone: 618.656.4646 |
| San Antonio, Texas 78205 | Telecopier: 618.656.7940 |
| Telephone: 210.281.7000 | Attorneys for Defendant AIG Sun America Life |
| Telecopier: 210.224.2035 | Assurance Co. f/k/a Anchor National Life Insurance Company |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record by enclosing same in an envelope with postage prepaid, and depositing same in a United States mail box in Edwardsville, Illinois, on May 13, 2004, duly addressed to the following:

Stephen M. Tillery, Esq.
10 Executive Woods Court
Swansea, IL  62226

George A. Zelcs, Esq.
Three First National Plaza
70 West Madison, Suite 660
Chicago, IL  60602

Eugene Barash, Esq.
701 Market Street, Suite 300
St. Louis, MS  63101

Robert L. King
Swedlow & King
Three First National Plaza
70 West Madison Street, Suite 660
Chicago, IL  60602

HEYL, ROYSTER, VOELKER & ALLEN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NITIKA MEHTA, AS TRUSTEE Of THE N.D. MEHTA LIVING TRUST, Individually and on behalf of others Similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>AIG SUNAMERICA LIFE ASSURANCE COMPANY, F/K/A ANCHOR NATIONAL LIFE INSURANCE COMPANY<br><br>Defendant. | § § § § § § § § § § § § § § § | CIVIL ACTION NO. _____ |

## DECLARATION OF LUCIA WILLIAMS

I, Lucia Williams, declare as follows:

1. I am a Director of Variable Annuity Product Compliance for AIG SunAmerica Life Assurance Company, the defendant in the above-captioned action. ("AIG SunAmerica Life"). I am authorized to make this declaration for and on behalf of AIG SunAmerica Life. I have personal knowledge of the facts stated below and, if called upon to testify to such facts, could do so.

2. I have reviewed the contract purchased by the plaintiff in this matter.

3. The N.D. Mehta Living Trust purchased Contract P1399211936 (the "Contract") from AIG SunAmerica Life, then known as Anchor National Life Insurance Company, on or about December 28, 1999.



DEFENDANT'S EXHIBIT A

1

4. Separate Account Variable Annuity Account Seven, a registered investment company under the Investment Company Act of 1940, funded the Contract.

I declare upon penalty of perjury under the laws of the United States of America that the foregoing statements made in this declaration are true and correct.

Executed this 14 day of January, 2004, at Los Angeles, California.

Lucia Williams



**STATE OF ILLINOIS
DEPARTMENT OF INSURANCE**
320 WEST WASHINGTON STREET
SPRINGFIELD, ILLINOIS 62767-0001

ROD R. BLAGOJEVICH
GOVERNOR

DEIRDRE K. MANNA
ACTING DIRECTOR

April 13, 2004

AIG SunAmerica Life Assurance Company
1 SunAmerica Center
Los Angeles, California 90067-6022

    Re: Case Number: 04 L 0199

Gentlemen:

    Enclosed please find copy of Summons and Complaint served on me as your agent for service of process on April 13th at 12:00 p.m. at my Springfield Office in the case of Nitika Mehta, As Trustee of the N.D. Mehta Living Trust, individually and on behalf of all others similarly situated, vs. your company et al.

                                  Sincerely,

                                  Deirdre K. Manna
                                  Acting Director

DKM:BB:msc
Encl.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED



DEFENDANT'S
EXHIBIT
B

http://www.ins.state.il.us/

| State of Illinois ) S.S. | Case Number 04-L-01 ?? |
|---|---|
| County of St. Clair ) | Amount Claimed _____ |

| Nitika Mehta, as Trustee of the N.D. Mehta Living Trust, individually and on behalf of all others similarly situated | AIG SunAmerica Life Assurance Co., f/k/a Anchor National Life Insurance Co. |
|---|---|
| Plaintiff(s) | VS |
|  | Defendant(s) |

Classification Prefix _____ Code _____  Nature of Action _____ Code _____

TO THE SHERIFF: SERVE THIS DEFENDANT AT:

Pltf. Atty. **Stephen M. Tillery** _____ Code _____
Address **10 Executive Woods Ct.**
City **Belleville, IL** _____ Phone **618-277-1180** Code _____
Add. Pltf. Atty. _____ Code _____

NAME **Director of Insurance**

ADDRESS **320 W. Washington Street**

CITY & STATE **Springfield, IL 62727**

☒ SUMMONS COPY

To the above named defendant(s) . . . . . :
☒

☐ A. You are hereby summoned and required to appear before this court at
(court location) _____ at _____ M. On _____ 19__
to answer the complaint in this case, a copy of which is hereto attached. If you fail to do so, a judgment by default may be taken against you for the relief asked in the complaint.

☒ B. You are hereby summoned and required to file an answer in this case or otherwise file your appearance in the office of the Clerk of this court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, judgment or decree by default may be taken against you for the relief prayed in the complaint.

TO THE OFFICER:
This summons must be returned by the officer or other person to whom it was given for service, with indorsement thereon of service and fees if any, immediately after service. In the event that paragraph A of this summons is applicable this summons may not be served less than three days before the day of appearance. If service cannot be made, this summons shall be returned so indorsed.

This summons may not be served later than 30 days after its date.

WITNESS, _____ April 5 _____ 2004

Clerk of Court

BY DEPUTY: _____

SEAL

DATE OF SERVICE: 4-13 2004
(To be inserted by officer on copy left with defendant or other person)

12:00

NOTICE TO DEFENDANT IN SMALL CLAIMS UNDER $15,000---SEE REVERSE SIDE    CC-MR-1

## NOTICE TO DEFENDANTS (Pursuant to Supreme Court Rule)

In a civil action for money (under $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1. You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney at the office of the Circuit Clerk, 219 So. Illinois, Belleville, Illinois.

2. You may enter your appearance at the time and place specified in the summons by making your presence known to the Judge when your case is called.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Court Clerk or the Sheriff's office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the return date on the summons, notify the plaintiff or his attorney of your desire to do so. Request that he appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request of the Court Clerk or the Sheriff, as only the Judge can dismiss a case, and, then only with a proper court order which must be entered in open Court.