FILED
04 MAY 13 PM 3:43

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

NITIKA MEHTA, AS TRUSTEE OF THE )
N.D. MEHTA LIVING TRUST, individually and on )
behalf of all others similarly situated, )
                                                    Plaintiff, )
vs. )
AIG SUNAMERICA LIFE ASSURANCE CO., )
F/K/A ANCHOR NATIONAL LIFE )
INSURANCE COMPANY )
                                                  Defendant. )

04-328 MJR
Cause No. 04L199

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

FILED
ST. CLAIR COUNTY
APR 5 2004
CIRCUIT CLERK

## COMPLAINT

Plaintiff Nitika Mehta, as trustee of the N.D. Mehta Living Trust, individually and on behalf of others similarly situated, states as follows for her Complaint against AIG SunAmerica Life Assurance Co. f/k/a Anchor National Life Insurance Company ("AIG SunAmerica Life"):

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Nitika Mehta is a resident of O'Fallon, Illinois, in St. Clair County.

2. At all times relevant to this Complaint, Plaintiff owned an AIG SunAmerica Life Polaris II Variable Annuity which she purchased for the N.D. Mehta Living Trust.

3. AIG SunAmerica Life is an Arizona corporation with its principal place of business in Los Angeles, California.

4. AIG SunAmerica Life is licensed to sell insurance products in Illinois, and at all times relevant to this Complaint, AIG SunAmerica Life has promoted, marketed, and sold insurance and variable annuities to the investing public nationwide, including in St. Clair County, Illinois.

5. AIG SunAmerica Life maintains investor relationships with clients in St. Clair County, Illinois, communicates regularly with them by mail and maintains an interactive website to communicate with clients, including clients in St. Clair County.

1

6. The transactions which are the subject of this Complaint occurred in part in St. Clair County, Illinois.

7. This Court therefore has jurisdiction over AIG SunAmerica Life pursuant to 735 ILCS § 5/2-209, and venue is proper in this County pursuant to 735 ILCS § 5/2-101.

### AIG SUNAMERICA LIFE'S VARIABLE ANNUITY FUNDS

8. Issuers of variable annuities like AIG SunAmerica Life have marketed the advantages of long-term investment through variable annuities (such as professional management, diversification, insurance protection and tax deferral) over direct investment in securities.

9. An AIG SunAmerica Life annuity, such as the AIG SunAmerica Life Polaris II Variable Annuity, is a contract between an investor and AIG SunAmerica Life, in which the investor agrees to make at least one minimum purchase payment to AIG SunAmerica Life in return for a series of annuity payments at a later date.

10. The AIG SunAmerica Life annuities which are the subject of this Complaint are those which consist of a "separate account" which keeps investors' assets separate from AIG SunAmerica Life's assets, and each annuity's separate account is further divided into multiple Variable Portfolios. Each Variable Portfolio corresponds to a single mutual fund, and AIG SunAmerica Life invests the assets of each Variable Portfolio in that Variable Portfolio's corresponding mutual fund. These mutual funds are maintained exclusively for variable annuity or variable life insurance products, although they often bear names very similar to those of retail mutual funds.

11. An investor may allocate her purchase payment and accumulated proceeds in the variable annuity among one or more of the various Variable Portfolios.

12. Different AIG SunAmerica Life annuities permit investment in some of the same Variable Portfolios, meaning that owners of different annuities may nevertheless be invested in the same Variable Portfolios.

13. When an investor allocates any portion of a purchase payment or accumulated proceeds to a Variable Portfolio, AIG SunAmerica Life credits the investor's contract with Accumulation Units.

14. Accumulation Units for AIG SunAmerica Life's Variable Portfolios can be traded, either by purchase or redemption, only once a day at 4:00 p.m. Eastern Time.

15. Variable Portfolio Accumulation Units are sold at a price based upon the Variable Portfolio "Accumulation Unit Value" (AUV) plus applicable sales charges. Accumulation Units of the Variable Portfolios may be redeemed at the AUV less any redemption or surrender charges. The AUV is the value of a single Accumulation Unit in a Variable Portfolio.

16. The number of Accumulation Units an investor receives is determined when she allocates some or all of a purchase payment or accumulated proceeds to a Variable Portfolio. The number of Accumulation Units is determined by dividing the amount of the purchase payment or accumulated proceeds allocated to the Variable Portfolio by the AUV of one Accumulation Unit of that Variable Portfolio.

17. AIG SunAmerica Life establishes a new daily AUV for each Variable Portfolio once every trading day at the close of trading on the New York Stock Exchange at 4:00 p.m. Eastern Time.

18. AIG SunAmerica Life establishes the daily AUV for each Variable Portfolio by dividing the total value of money invested in each Variable Portfolio (less any asset-based charges or other charges such as taxes) by the total number of Accumulation Units outstanding.

19. Because a Variable Portfolio's AUV is based upon the per share value of the underlying mutual fund, the value of an investor's Variable Portfolio Accumulation Units is subject to change much the same way that the value of a mutual fund share changes each day. The value of an investor's Variable Portfolio Accumulation Units will fluctuate as the value of the corresponding mutual fund fluctuates.

20. The mutual funds in which AIG SunAmerica Life invests Variable Portfolio assets are managed by fund managers with which AIG SunAmerica Life contracts.

21. The fund managers handle the day-to-day tasks associated with managing an investment portfolio, such as investment management and valuation of the mutual fund's underlying portfolio of securities.

22. At the end of each trading day, the assets of the mutual fund are valued, and a "net asset value" is established for the mutual fund. That net asset value is the same net asset value AIG SunAmerica Life uses to establish the corresponding Variable Portfolio's daily AUV.

## AIG SUNAMERICA LIFE'S VARIABLE PORTFOLIOS' UNDERLYING PORTFOLIOS INCLUDE FOREIGN MUTUAL FUNDS

23. Some of the mutual funds in which the annuity Variable Portfolios are invested include in their portfolios securities which are traded in markets outside of the United States.

24. In valuing the assets of a mutual fund, the fund manager uses the last trade price in the home market of each of the securities in its portfolio. The home markets for such foreign securities include London, Paris, Frankfurt, Moscow, Singapore, Kuala Lumpur, Hong Kong, Taipei, Tokyo and Sydney. These markets are located in time zones that are five to fifteen hours ahead of Eastern Time.

25. Thus, a five to fifteen hour interval elapses between the close of the foreign securities markets and AIG SunAmerica Life's calculation of its Variable Portfolio's AUV.

26. For example, the exchange located in Tokyo, Japan observes normal trading hours of 9:00 a.m. to 3:00 p.m. local time. Active trading of securities traded on this exchange ends, and closing prices for those securities are posted, at 3:00 p.m. local time (2:00 a.m. Eastern time). When the mutual fund calculates the value of its portfolio securities using closing prices from this exchange and AIG SunAmerica Life sets its Variable Portfolio AUV based upon those values, AIG SunAmerica Life relies upon closing prices for securities traded on this exchange that have been static for 14 hours.

27. Studies of world financial markets have established associations between the value changes among various markets. There is a positive correlation between value movements in the U.S. markets and value movements in foreign markets. If the U.S. markets experience an upward movement in values, it can be predicted that Asian markets will move upward once trading begins the next day. The same upward movement can be predicted for European markets once trading begins the next day. Similarly, if the U.S. markets experience a downward movement in values, it can be predicted that Asian and European markets will move downward once trading begins the next day.

28. Studies also demonstrate that the greater the percentage increase or decrease in the value of U.S. markets, the more likely foreign markets will post corresponding value movements on the subsequent trading day. The probability that the value movements of foreign markets will follow the previous day's value movements in U.S. markets is directly correlated to the degree or extent of the value movement of U.S. markets.

## AIG SUNAMERICA LIFE EXPOSES INVESTORS TO MARKET TIMING TRADING

29. A significant portion of the underlying securities in the mutual fund portfolios associated with the AIG SunAmerica Life Variable Portfolios are listed on foreign exchanges and trade during each market's respective session. The share values set by these mutual funds and used by AIG SunAmerica Life in setting its AUV do not take into account on a daily basis any price relevant information (such as value movements in the U.S. markets, changes in world equity market indices, changes in the value of American Depository Receipts (ADRs), and fluctuations in foreign currency futures markets) that has become available in the interval between the close of the foreign markets and the calculation of the AUV. Such price relevant information impacts the valuation of the underlying securities in the mutual funds in which Variable Portfolio proceeds are invested and the subsequent calculation of the Variable Portfolios' AUVs. Such price relevant information is significant because the final market prices of the foreign securities often have become stale and no longer accurately reflect the true current market value of the securities.

30. By failing to make daily adjustments based upon the direction and degree of correlations between movements in U.S. and foreign markets, changes in world equity market indices, changes in the value of ADRs, and fluctuations in foreign currency futures markets, and by calculating Variable Portfolio AUVs based upon the corresponding mutual funds' net asset values which, in turn, are based upon the stale prices of foreign securities in the mutual funds' portfolios, AIG SunAmerica Life has exposed long-term annuity owners to market timing traders who regularly purchase and redeem Accumulation Units of AIG SunAmerica Life's Variable Portfolios as part of a profitable, stale-price trading strategy.

31. Market timing trading strategy is a short-term trading strategy which takes advantage of the stale pricing of the foreign securities upon which the Variable Portfolios' AUVs are based, enabling such traders to predict changes in the AUVs as a result of price relevant events that occur after the close of foreign securities markets and before AIG SunAmerica Life calculates the Variable Portfolios' daily AUVs. Market timing traders are able to predict changes in Variable Portfolio AUVs because of the positive directional and degree of correlations between movements in U.S. and foreign markets, changes in world equity market indices, changes in the value of ADRs, and fluctuations in foreign currency futures markets.

32. The stale price strategy of market timers who trade in Accumulation Units of AIG SunAmerica Life's Variable Portfolios is to buy Accumulation Units on days when the U.S. markets move up and to redeem Accumulation Units when the U.S. markets move down. In order to derive maximum benefit from price relevant information developed subsequent to the now stale closing prices of the portfolio securities, market timers wait until the variable annuity's deadline for buying or redeeming Accumulation Units in AIG SunAmerica Life's Variable Portfolios on any particular business day. Because AIG SunAmerica Life cannot make an investment in the underlying mutual fund and the mutual fund cannot buy or sell the foreign securities in its underlying portfolio (due to the time difference between New York and the home markets of the foreign securities) at the time AIG SunAmerica Life sets the daily AUV, the Accumulation Units that AIG SunAmerica Life issues to and redeems from market timers do not reflect the actual value of the foreign securities held in the portfolio of the corresponding mutual fund.

33. Due to AIG SunAmerica Life's use of mutual fund net asset values which are based upon stale prices of foreign securities, market timers who buy AIG SunAmerica Life's Variable Portfolio Accumulation Units on days when the U.S. markets move up are buying discounted Accumulation Units and thereby dilute the ownership interests of other Variable Portfolio holders because the Variable Portfolios' underlying foreign securities assets are undervalued as of the time of the Accumulation Unit purchase.

34. Due to AIG SunAmerica Life's use of mutual fund net asset values which are based upon stale prices of foreign securities, market timers who redeem AIG SunAmerica Life's Accumulation Units on days when the U.S. markets move down are redeeming Accumulation Units at a premium and thereby dilute the ownership interests of other Variable Portfolio holders because the underlying foreign securities assets are overvalued as of the time of the Accumulation Unit redemption.

35. The excess profits that market timing traders obtain take advantage of the stale pricing of AIG SunAmerica Life's Variable Portfolios and dilute the ownership interests of other Variable Portfolio holders. When market timing traders buy Accumulation Units at stale, discounted prices, the ownership interests of other Variable Portfolio holders are diluted because the market timer has unfairly become, per Accumulation Unit, an equal Variable Portfolio owner with existing owners per Accumulation Unit. When market timing traders later redeem those Accumulation Units at a premium, the prior dilution of other Variable Portfolio holders' ownership interests is made permanent and, if the AUV is then artificially inflated as a result of AIG SunAmerica Life's AUV calculation practices, may further dilute other Variable Portfolio holders' ownership interests. Long-term Variable Portfolio holders suffer a dilution in their ownership interests and the wealth represented by that diluted amount is transferred from them to market timing traders. Thus, the market timing trades capture an arbitrage profit that comes dollar-for-dollar out of the pockets of the investors.

## CLASS ACTION ALLEGATIONS

36. Through her ownership of the AIG SunAmerica Life Polaris II Variable Annuity, Plaintiff at all times relevant to this Complaint held Accumulation Units in the Alliance Global Equities Variable Portfolio for the purpose of long-term investment.

37. Plaintiff brings this class action on behalf of herself and on behalf of a class of all persons in the United States who, through their ownership of an AIG SunAmerica Life annuity or insurance product, held Accumulation Units of any AIG SunAmerica Life Variable Portfolio invested in mutual funds which included foreign securities in their portfolios and which experienced market timing trading activity. Excluded from the Class are AIG SunAmerica Life and any of its parent, subsidiary or affiliated

7

corporations, as well as any of their controlled persons, officers, directors, agents, servants or employees, and the immediate family members of any such person; any judge who may preside over this case; all persons who have claims in excess of $75,000; and any investor who engaged in market timing trading in the AIG SunAmerica Life Variable Portfolios which are the subject of this Complaint.

38. Excluded from this Complaint are any claims based upon AIG SunAmerica Life's conduct in connection with Plaintiff's or any class member's purchase or sale of any AIG SunAmerica Life annuity product or Accumulation Units in any AIG SunAmerica Life Variable Portfolio.

39. Plaintiff is a member of the Class and will fairly and adequately assert and protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of other class members.

40. Plaintiff has retained attorneys who are experienced in class action litigation.

41. Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. While Plaintiff cannot ascertain the exact number and identity of class members prior to discovery, on information and belief, there are thousands of class members and their identity can be ascertained from AIG SunAmerica Life's books and records.

42. There are questions of law or fact common to the Class.

43. Those common questions predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

    a.    whether AIG SunAmerica Life negligently failed to evaluate on a daily basis price relevant information available after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, which was likely to change the value of the mutual fund securities and thus Variable Portfolio AUVs;

    b.    whether AIG SunAmerica Life negligently failed to implement valuation and pricing policies and procedures which account for price relevant events occurring after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, when calculating the AUV when closing prices of mutual fund portfolio securities did not reflect their true market values;

    c.    whether AIG SunAmerica Life negligently failed to protect its Variable Portfolio holders from market timing trading;

d.  whether AIG SunAmerica Life breached its fiduciary obligations to Plaintiff and the Class by failing to evaluate on a daily basis price relevant information available after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, which was likely to change the value of the mutual fund securities and thus Variable Portfolio AUVs;

e.  whether AIG SunAmerica Life breached its fiduciary obligations to Plaintiff and the Class by failing to implement valuation and pricing policies and procedures which account for price relevant events occurring after the close of the exchanges in which the securities held by the mutual funds' portfolios trade, but before the setting of the daily AUV, when calculating the AUV whenever closing prices of mutual fund portfolio securities did not reflect their true market values;

f.  whether AIG SunAmerica Life breached its fiduciary obligations to Plaintiff and the Class by failing to implement valuation and pricing policies that use price relevant information to value mutual fund portfolio securities and Variable Portfolio AUVs whenever closing prices of the securities held by the mutual funds' portfolios did not reflect their true market values;

g.  whether AIG SunAmerica Life breached its fiduciary obligations to Plaintiff and the Class by failing to protect AIG SunAmerica Life Variable Portfolio holders from market timing trading;

h.  whether Plaintiff and the Class have sustained damages as a result of AIG SunAmerica Life's conduct; and/or

i.  the proper measure of any such damages.

44. The prosecution of separate actions by individual members of the Class would create a risk of:

a.  inconsistent or varying adjudications with respect to individual members of the Class; and/or

b.  adjudication with the respect to individual members of the class, which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protest their interest.

45. The class action method is appropriate for the fair and efficient prosecution of this action.

46. Individual litigation of all claims, which might be brought by all class members, would produce a multiplicity of cases so that the judicial system would be congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising from the conduct of AIG SunAmerica Life.

## COUNT I

47. Plaintiff repeats and incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

48. AIG SunAmerica Life directly or impliedly held itself out as a skilled specialist in the field of investment management, possessing the specialized knowledge, skill and care ordinarily used by reasonably well-qualified members of the investment management profession.

49. It thereby became AIG SunAmerica Life's duty to exercise that degree of knowledge, skill and care ordinarily used, or which should be used, by reasonably well-qualified members of the investment management profession, including but not limited to the duties:

   a. to use mutual fund share values predicated upon accurate market values when valuing Variable Portfolios and setting their daily AUV's; and/or

   b. to prevent market timing trading in Variable Portfolios to prevent the dilution of the ownership interests of long-term investors.

50. AIG SunAmerica Life knew or should have known that the closing prices for the foreign securities held in its Variable Portfolios' corresponding mutual funds' portfolios did not represent accurate market values of those foreign securities whenever price relevant events had occurred after the closing of foreign securities markets but before AIG SunAmerica Life's calculation of daily AUVs.

51. AIG SunAmerica Life was negligent in one or more of the following ways:

   a. failing to evaluate on a daily basis price relevant information available to AIG SunAmerica Life after the close of foreign securities markets in which the underlying mutual funds' portfolios of securities traded;

   b. failing to adjust calculation of the daily AUV to take into account any changes in value of the foreign securities held in the underlying mutual funds' portfolios whenever price relevant events occurred after the closing of the foreign securities markets but before AIG SunAmerica Life's calculation of daily AUVs;

   c. failing to implement AIG SunAmerica Life's valuation and Accumulation Unit pricing policies and procedures;

   d. using valuation and Accumulation Unit pricing policies and procedures which benefited market timing traders of AIG SunAmerica Life's Variable Portfolios at the expense of long-term Variable Portfolio holders; and/or

   e. by favoring certain investors and permitting them to engage in market timing trading at the expense of other investors, namely Plaintiff and the Class.

52. As a direct and proximate result of AIG SunAmerica Life's negligence, Plaintiff and the Class have suffered damages in the amount to be proven at trial, but less than $75,000 per Plaintiff or Class member, including all compensatory damages and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against AIG SUNAMERICA LIFE ASSURANCE CO.; ordering that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certifying an appropriate class; and awarding Plaintiff and the Class compensatory damages, attorney's fees, prejudgment interest, and costs of suit in an amount not to exceed $75,000 per plaintiff or class member. Plaintiff demands a trial by jury on all issues so triable.

## COUNT II

53. Plaintiff repeats and incorporates by reference paragraphs 1 through 47 and 49 through 50 as if fully set forth herein.

54. AIG SunAmerica Life knew or was recklessly indifferent to the fact that the closing prices for the foreign securities held in its Variable Portfolios' corresponding mutual funds' portfolios did not represent accurate market values of those foreign securities whenever price relevant events had occurred after the closing of foreign securities markets and before AIG SunAmerica Life's calculation of the daily AUVs.

55. AIG SunAmerica Life knowingly or with utter indifference to and conscious disregard for the rights of Plaintiff and the Class willfully and wantonly engaged in one or more of the following acts or omissions:

   a. failing to evaluate on a daily basis price relevant information available to AIG SunAmerica Life after the close of foreign securities markets in which the underlying mutual funds' portfolios of securities traded;

   b. failing to adjust calculation of the daily AUV to take into account any changes in value of the foreign securities held in the underlying mutual funds' portfolios whenever price relevant events occurred after the closing of the foreign securities markets but before AIG SunAmerica Life's calculation of daily AUVs;

   c. failing to implement AIG SunAmerica Life's valuation and Accumulation Unit pricing policies and procedures;

    d.    using valuation and Accumulation Unit pricing policies and procedures which benefited market timing traders of AIG SunAmerica Life's Variable Portfolios at the expense of long-term Variable Portfolio holders; and/or

    e.    by favoring certain investors and permitting them to engage in market timing trading at the expense of other investors, namely Plaintiff and the Class.

56. As a direct and proximate result of AIG SunAmerica Life's foregoing conduct, Plaintiff and the Class have suffered damages in the amount to be proven at trial, but less than $75,000 per Plaintiff or Class member, including all compensatory damages and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against AIG SUNAMERICA LIFE ASSURANCE CO.; ordering that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certifying an appropriate class; and awarding Plaintiff and the Class compensatory and punitive damages, attorney's fees, prejudgment interest, and costs of suit in an amount not to exceed $75,000 per plaintiff or class member. Plaintiff demands a trial by jury on all issues so triable.

### COUNT III

57. Plaintiff repeats and incorporates by reference paragraphs 1 through 47 and 49 through 50 as if fully set forth herein.

58. A special relationship existed between AIG SunAmerica Life and Plaintiff and the Class as a result of the following:

    a.    AIG SunAmerica Life is a stock corporation. The shareholders select the board of directors who will manage AIG SunAmerica Life's assets, and the directors act as fiduciaries in managing Plaintiff's and Class' funds;

    b.    AIG SunAmerica Life assumed a position of trust and confidence by servicing and managing Plaintiff's and class members' investments in AIG SunAmerica Life annuities;

    c.    The calculation of the AUV was within the exclusive control of AIG SunAmerica Life;

    d.    Whether market timing was allowed to occur in the Variable Portfolios was within the exclusive control of AIG SunAmerica Life;

    e.    Because AIG SunAmerica Life's variable annuities were contracts of adhesion prepared by AIG SunAmerica Life and not subject to negotiation, unequal bargaining power existed between Plaintiff and class members and AIG SunAmerica Life;

    f.   AIG SunAmerica Life and its agents held themselves out as highly-skilled insurance and financial experts, possessing the special knowledge and expertise needed to interpret and understand the complex and sophisticated daily management of annuity investments; and/or

    g.   AIG SunAmerica Life is an insurer characterized by elements of public interest which subject it to more stringent standards of conduct than those normally arising out of contract.

59. As a result of the foregoing, AIG SunAmerica Life was a fiduciary to Plaintiff and Class members, and AIG SunAmerica Life owed Plaintiff and the Class certain fiduciary duties.

60. AIG SunAmerica Life breached its fiduciary duties to Plaintiff and the Class in one or more of the following ways:

    a.   exposing Plaintiff's and the Class' ownership interests in the Variable Portfolios to dilution through market timing trading by failing to evaluate on a daily basis price relevant information available to AIG SunAmerica Life after the close of foreign securities markets in which the underlying mutual funds' portfolios of securities traded;

    b.   exposing Plaintiff's and the Class' ownership interests in the Variable Portfolios to dilution through market timing trading by failing to adjust calculation of the daily AUV to take into account any changes in value of the foreign securities held in the underlying mutual funds' portfolios whenever price relevant events occurred after the closing of the foreign securities markets but before AIG SunAmerica Life's calculation of daily AUVs;

    c.   exposing Plaintiff's and the Class' ownership interests in the Variable Portfolios to dilution through market timing trading by failing to implement AIG SunAmerica Life's valuation and Accumulation Unit pricing policies and procedures;

    d.   exposing Plaintiff's and the Class' ownership interests in the Variable Portfolios to dilution through market timing trading by using valuation and Accumulation Unit pricing policies and procedures which benefited market timing traders of AIG SunAmerica Life's Variable Portfolios at the expense of long-term Variable Portfolio holders;

    e.   by failing to provide complete and truthful information to Plaintiff and the Class regarding AIG SunAmerica Life's allowance of market timing activities in AIG SunAmerica Life Variable Portfolios;

    f.   by failing to provide complete and truthful information to Plaintiff and the Class regarding the dilution of their holdings due to AIG SunAmerica Life's failure to use accurate market values of foreign securities held in the underlying mutual funds' portfolios when setting daily AUV's; and/or

    g.   by favoring certain investors and permitting them to engage in market timing trading at the expense of other investors, namely Plaintiff and the Class.

13

61. As a direct and proximate result of AIG SunAmerica Life's breaches of fiduciary duties, Plaintiff and the Class have suffered damages in the amount to be proven at trial, but less than $75,000 per plaintiff or class member, including all compensatory damages and costs.

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their favor and against AIG SUNAMERICA LIFE ASSURANCE CO.; ordering that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certifying an appropriate class; and awarding Plaintiff and the Class compensatory and punitive damages, attorney's fees, prejudgment interest, and costs of suit in an amount not to exceed $75,000 per plaintiff or class member. Plaintiff demands a trial by jury on all issues so triable.

## COUNT IV

62. Plaintiff repeats and incorporates by reference paragraphs 1 through 62 as if fully set forth herein.

63. AIG SunAmerica Life's valuation and Accumulation Unit pricing policies and practices which are the subject of this Complaint were conceived in and emanated from California.

64. Because AIG SunAmerica's principal place of business is in California and because AIG SunAmerica Life's valuation and Accumulation Unit pricing policies and practices which are the subject of this Complaint were conceived in and emanated from California, AIG SunAmerica Life is subject to the provisions of Cal. Bus. & Prof. Code § 17200 *et seq*.

65. California Bus. & Prof. Code § 17200 prohibits any "unlawful . . . business act or practice." AIG SunAmerica Life has violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an unlawful act or practice by violating the common law as alleged in Counts I through III of this Complaint.

66. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

67. California Bus. & Prof. Code § 17200 also prohibits any "unfair . . . business act or practice." As detailed in the preceding paragraphs, AIG SunAmerica Life engaged in conduct that is

unfair within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq*. AIG SunAmerica Life's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws identified herein and the policies supporting those laws.

68. AIG SunAmerica Life's conduct caused and continues to cause substantial injury to Plaintiff and Class members.

69. The justifications, if any, for AIG SunAmerica Life's wrongful conduct were and are vastly outweighed by the adverse effects of such conduct.

70. Finally, there were reasonably available alternatives to AIG SunAmerica Life to further its business interests, other than the acts and omissions described in this Complaint. As a result, AIG SunAmerica Life engaged in unfair business practices prohibited by Cal. Bus. & Prof. Code § 17200 *et seq*.

71. California Bus. & Prof. Code § 17200 also prohibits any "fraudulent business act or practice." AIG SunAmerica Life's acts and omissions, as more fully set forth elsewhere in this Complaint, were fraudulent within the meaning of Cal. Bus. & Prof. Code § 17200, and were likely to deceive the public, Plaintiff and Class members. AIG SunAmerica Life's fraudulent conduct constitutes a fraudulent business act or practice within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq*.

72. AIG SunAmerica Life engaged in these unlawful, unfair and fraudulent business acts and practices with others who participated, in whole and in part, in the conduct alleged.

73. As a result of the foregoing conduct, AIG SunAmerica Life and any co-participants have been unjustly enriched at the expense of plaintiff and Class members.

74. As a co-participant in the violation of Cal. Bus. & Prof. Code § 17200 *et seq*., AIG SunAmerica Life is jointly and severally liable for the restoration to any person of any and all money that has been acquired by means of the alleged violations of Cal. Bus. & Prof. Code § 17200 *et seq*.

75. The unlawful, unfair, and fraudulent business practices of Defendant described above present a continuing threat to members of the public in that Defendant continues to engage in the conduct described herein.

WHEREFORE, Plaintiff and the Class pray that the Court order that this action be maintained as a class action pursuant to 735 ILCS § 5/2-801 and certify an appropriate class; grant restitution to Plaintiff and the Class by ordering Defendant AIG SUNAMERICA LIFE ASSURANCE CO. to return to Plaintiff and the Class all sums unlawfully and unfairly obtained from them as the result of AIG SunAmerica Life's unfair and unlawful business practices in an amount not to exceed $75,000 per plaintiff or class member; and order Defendant AIG SUNAMERICA LIFE ASSURANCE CO. to pay to Plaintiffs and the Class all costs of suit, attorneys' fees, prejudgment interest and any other relief the Court deems appropriate under the circumstances in accordance with section 17200 of the California Business and Professions Code.

KOREIN TILLERY

By: _____
STEPHEN M. TILLER #2834995
10 Executive Woods Court
Swansea, Illinois 62226
Telephone:  618/277-1180
Facsimile:   314/241-3525

GEORGE A. ZELCS #3123738
Three First National Plaza
70 West St. Clair, Suite 660
Chicago, Illinois 60602
Telephone: 312/641-9750
Facsimile:  312/641-9751

EUGENE BARASH #6280933
701 Market Street, Suite 300
St. Louis, Missouri 63101
Telephone: 314/241-4844
Facsimile:  314/241-3525

SWEDLOW & KING
ROBERT L. KING # 6209033
Three First National Plaza
70 West Madison Street, Suite 660
Chicago, Illinois 60602

*Attorneys for Plaintiff and the Class*

16